UNITED STATES of America, Appellee,

v.

Joseph Thomas LEE, Appellant.

No. 85–1346.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1985.
Decided Jan. 29, 1986.

Thomas M. Bradshaw, Kansas City, Mo., for appellant.

Linda L. Sybrant, Asst. U.S. Attys., Kansas City, Mo., for appellee.

Before HEANEY, FAGG and BOWMAN, Circuit Judges.

FAGG, Circuit Judge.

Joseph Thomas Lee was convicted on one count of conspiracy to distribute cocaine, on four counts of distribution of cocaine, and on one count of possession with intent

to distribute cocaine. On appeal, he argues that a fatal variance existed between count one of the indictment and the government's evidence presented at trial and that he did not receive effective assistance of counsel. We affirm.

Lee's grand jury indictment arose out of a series of cocaine sales beginning April 27, 1984, and ending October 3, 1984. Count one of the indictment charged Lee, Donna Miller, Sherry Caswell, and Ray Dean Fosberg with participating in a conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846. Counts two, three, four, and five charged Lee and other coconspirators with distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). Count six charged Lee with possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

The FBI began its investigation of Lee's cocaine trafficking activity in April of 1984. An FBI informant purchased cocaine on four separate occasions. On each occasion Lee was the supplier of cocaine. In the first two sales, the informant purchased cocaine from Caswell. At the time, Caswell lived with Lee. Miller, an acquaintance of Caswell, arranged the first transaction through a series of telephone conversations with the informant. The informant dealt directly with Caswell in the second transaction.

Shortly after the second transaction, Lee replaced Caswell with Fosberg to transact the cocaine sales. Because Caswell was using a substantial amount of cocaine herself, Lee felt that she could not be trusted. Thus, in the final two cocaine sales, the informant dealt directly with Fosberg.

The final sale occurred on October 3, 1984. The informant agreed to purchase a quarter pound of cocaine for $7500. In this instance, however, the informant met directly with Lee. Prior to their meeting, the informant met Fosberg at a parking lot. From there, the two rode in the informant's automobile to another parking lot.

Upon arriving, Lee approached the automobile and Fosberg gave Lee $7500 that the informant had earlier given him. Lee then gave the informant a jacket that contained cocaine in one of the pockets. Lee and Fosberg were placed under arrest, and FBI agents conducted an inventory search of Lee's automobile. Over a pound of additional cocaine was discovered in the trunk.

■ Lee argues that the government's evidence at trial established several separate conspiracies rather than the single conspiracy charged in count one of the indictment. Lee claims that the government's evidence proves four separate and distinct drug sales that were not part of one overall conspiracy.

Where an indictment alleges a single conspiracy and the government proves the existence of multiple conspiracies, the conviction must be reversed if the variance affects substantial rights of the accused. In determining whether multiple conspiracies rather than a single one have been proved, "[t]he general test is whether there was 'one overall agreement' to perform various functions to achieve the objectives of the conspiracy." A conspirator need not know all of the other conspirators or be aware of all the details of the conspiracy, so long as the evidence is sufficient to show knowing contribution to the furtherance of the conspiracy. *United States v. Massa,* 740 F.2d 629, 636 (8th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985) (citations omitted). Furthermore, "[t]he existence of a single agreement can be inferred if the evidence revealed that the alleged participants shared 'a common aim or purpose' and 'mutual dependence and assistance existed.'" *United States v. DeLuna,* 763 F.2d 897, 918 (8th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985) (quoting *United States v. Jackson,* 696 F.2d 578, 582–83 (8th Cir.1982), *cert. denied,* 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983)).

Viewing the evidence in the light most favorable to the verdict, we conclude that the jury could have found that one overall agreement existed among the conspirators. We find it unnecessary to describe the conspiracy in structural terms. It is sufficient to say that the evidence establishes an on-

going single purpose enterprise among the conspirators to sell cocaine that was supplied by Lee. Although all the conspirators were not involved in each of the four transactions, this factor does not preclude a finding of one overall conspiracy.

"Various people knowingly joining together in furtherance of a common design or purpose constitute a single conspiracy." *United States v. Percival*, 756 F.2d 600, 607 (7th Cir.1985) (quoting *United States v. Varelli*, 407 F.2d 735, 742 (7th Cir.1969)). Indeed, the agreement "may include the performance of many transactions. New parties may join the agreement at any time while others may terminate their relationship. The parties are not always identical, but this does not mean that there are separate conspiracies." *United States v. Warner*, 690 F.2d 545, 549 n. 7 (6th Cir.1982) (quoting *Varelli*, 407 F.2d at 742). Because we find evidence in the record from which the jury could infer that a single conspiracy existed, we conclude that there was no variance between the indictment and the government's evidence.

Lee also claims that he was denied effective assistance of counsel in violation of his sixth amendment rights. Lee claims that his counsel was ineffective for two reasons: (1) his failure to interview witnesses; and (2) his failure to object to evidence of other crimes.

A two-part test has been formulated in determining whether counsel's assistance was so defective to warrant the reversal of the defendant's conviction. "First, the defendant must show that counsel's performance was deficient. * * * Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In establishing prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* 104 S.Ct. at 2068.

■ Lee claims that his counsel's failure to interview the informant and coconspirators Miller and Caswell before trial was prejudicial, because counsel would have discovered their addiction to cocaine and could have then called an expert witness to testify about the effects of heavy cocaine use.

Although we recognize that "[g]enerally, a competent attorney as part of his investigation will independently interview the witnesses," we cannot say that Lee was prejudiced by counsel's failure to interview these government witnesses. *Beans v. Black*, 757 F.2d 933, 936 (8th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 381, 88 L.Ed.2d 334 (1985). Lee knew of Caswell's heavy cocaine use. Indeed, he replaced Caswell with Fosberg to transact the cocaine sales due to Caswell's cocaine addiction.

Although Lee's counsel did not call an expert, he did conduct extensive cross-examination of these witnesses concerning their cocaine use. Furthermore, from a review of the transcript, we find that counsel's cross-examination provided the jury with the information that Lee seeks to introduce through an expert witness. Hence, Lee fails to demonstrate how he was prejudiced by counsel's failure to offer the testimony of an expert.

Caswell testified that she used cocaine extensively and that heavy cocaine use could cause her to become confused about facts and circumstances. Miller testified that she used cocaine regularly through October 1984, that it had a lingering effect on her, and that she used cocaine the day before she helped arrange the first drug transaction. The informant also admitted to heavy cocaine use during the period that the drug transactions took place. Miller and Fosberg both testified that the informant was a heavy user of cocaine and that he was affected by the drug. Because we find that counsel's failure to interview these government witnesses did not prejudice Lee, we need not determine whether counsel breached his duty to investigate. *See United States v. McMillan*, 606 F.2d 245, 247–48 (8th Cir.1979) (per curiam).

■ Lee also claims that counsel's failure to object to evidence of other crimes prejudiced his right to a fair trial. Lee's coconspirators testified that Lee was in-

volved in numerous other cocaine transactions not mentioned in the indictment including trips Lee made to Florida to purchase cocaine.

We disagree with Lee's contention. In the first place, we believe the evidence of Lee's other cocaine transactions was admissible evidence under Rule 404(b) of the Federal Rules of Evidence to prove intent, knowledge, or the existence of a common scheme or plan. *See, e.g., United States v. Marchant,* 774 F.2d 888, 893–94 (8th Cir. 1985). Counsel cannot be rendered ineffective for failing to object to evidence that would have otherwise been admissible. *Marler v. Blackburn,* 777 F.2d 1007, 1009–10 (5th Cir.1985).

Second, Lee has not made a sufficient showing of prejudice under *Strickland.* Even if counsel's failure to object constituted error, Lee has failed to show that but for this error, the result of the trial would have been different. *Strickland,* 104 S.Ct. at 2068. The additional evidence presented at trial to support Lee's convictions was overwhelming.

Accordingly, we affirm Lee's convictions.